UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN GIBSON, a married man, on behalf of himself and his marital community,<br><br>Plaintiff,<br><br>v.<br><br>KING COUNTY, a municipal corporation of the State of Washington, STEPHANIE WARDEN, Director of King County Department of Development and Environmental Services, in her official and individual capacities, JIM RANKIN, King County Fire Marshal, in his official and individual capacities, LESLIE EATON, in his official and individual capacities, and LAWRENCE CANARY, in his official and individual capacities,<br><br>Defendants. | No. C04-1940MJP<br><br>ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

Defendants have moved for summary judgment on all of Plaintiff's claims. Neither side has requested oral argument on this motion, and the Court does not find that oral argument is necessary to rule on this matter. Having received and reviewed Defendants' Motion, Plaintiff's Response, and Defendants' Reply, and all exhibits and documents submitted therewith, the Court hereby DENIES in

ORDER - 1

part and GRANTS in part Defendants' motion for summary judgment, consistent with the discussion below.

## BACKGROUND

Plaintiff was a King County arson investigator who applied for a promotion to Assistant Fire Marshall. Plaintiff was one of two finalists, but was not offered the position. The position was instead offered to the other finalist, Defendant Canary. Plaintiff is African-American. Defendant Canary is Caucasian. Plaintiff initially raised a complaint within the Department and then lodged a formal complaint that the decision not to promote him was racially motivated. King County conducted an internal investigation, which ultimately determined that the decision was not racially motivated. Plaintiff brings claims of state law discrimination and hostile racial environment under RCW 49.60.030(1)(a) and 49.60.180(3), retaliation under RCW 49.60.210(1), aiding and abetting unfair practices under RCW 49.60.220, violations of 42 U.S.C. § 1981. Both sides also address in the current motion an implied constructive discharge claim. Defendant now seeks summary judgment on all claims.

## ANALYSIS

### I. Summary judgment standard

In discrimination cases, the issue on summary judgment is whether, on the facts before the court, a reasonable judge or jury could find that an employer acted with an illegal motive. deLisle v. FMC Corp., 57 Wn.App. 79, 83 (1990). The court must view the inferences drawn from the facts in the light most favorable to the nonmoving party, and reasonable doubts about the existence of a factual issue are to be resolved against the moving party. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-631 (9th Cir 1987). In the Ninth Circuit, the standard for granting summary judgment in employment discrimination cases is high, since the ultimate question is one that can "only be resolved through a searching inquiry--one that is most appropriately conducted by the factfinder,

ORDER - 2

upon a full record." <u>Johnson v. Evangelical Lutheran Good Samaritan Society</u>, 2005 WL 2030834, *2 (D.Or. 2005) <u>citing</u> <u>Schnidrig v. Columbia Mach., Inc.</u>, 80 F.3d 1406, 1410 (9th Cir 1996) (internal citations and quotations omitted), *cert denied,* 519 U.S. 927 (1996). Thus, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment. <u>Chuang v. University of California Davis, Bd. of Trustees</u>, 225 F.3d 1115, 1124 (9th Cir. 2000). If all burdens have been met and there are competing reasonable inferences, both discriminatory and nondiscriminatory, then a jury must decide the question. <u>Hill v. BCTI Income Fund-I</u>, 144 Wn.2d 172, 186 (2001).

## II. State law racial discrimination claim and section 1981 claims

Plaintiff brings state and federal racial discrimination claims under RCW 49.60.030(1)(a) and 49.60.180(3), and 42 U.S.C. § 1981. In analyzing state law discrimination claims, Washington largely adopts the federal protocol announced in <u>McDonnell Douglas Corp v. Green</u>, 411 U.S. 792 (1973) for the analysis of Title VII claims. <u>Hernandez v. Spacelabs Medical Inc.</u>, 343 F.3d 1107, 1112 (9th Cir. 2003), <u>citing</u> <u>Hill v. BCTI Income Fund-I</u>, 144 Wn.2d 172 (2001). Section 1981 claims are similarly analyzed using the legal principles under Title VII claims. <u>Manatt v. Bank of Am.</u>, 339 F.3d 792, 797-798 (9th Cir. 2003).

Under <u>McDonnell Douglas</u>, a plaintiff must make a prima facie case of employment discrimination by demonstrating (1) he belongs to a racial minority; (2) he applied for and was qualified for a job for which the employer was seeking applicants; (3) the employer rejected plaintiff; and (4) after plaintiff was rejected, the employer continued to seek applicants from persons of plaintiff's qualifications, or the position was given to a non-racial minority applicant. <u>McLean v. Phillips-Ramsey, Inc.</u>, 624 F.2d 70, 71 (9th Cir. 1980). Once a prima facie showing is made, a rebuttable presumption of discrimination arises and the burden of production shifts to the employer to articulate a legitimate nondiscriminatory justification for its action. <u>Hill v. BCTI Income Fund-I</u>, 144

ORDER - 3

Wn.2d 172, 181 (2001). If the employer meets its burden of production, the presumption is dissolved and the burden shifts back to the plaintiff to prove that the proffered reasons are a pretext for discrimination. Id. at 182. At all times, the plaintiff retains the ultimate burden of persuasion. Id. at 181. A plaintiff must prove race was a "substantial factor" in an employer's adverse employment decision for state law claims, and a "determining" factor for federal claims. Mackay v. Acorn Custom Cabinetry, Inc. 127 Wn.2d 302, 310 (1995); Ruggles v. Cal. Poly St. Univ., 797 F.2d 782, 785 (9th Cir. 1986).

**A. Plaintiff's prima facie case.**

Plaintiff makes a prima facie showing of discrimination, which is undisputed by Defendants. Plaintiff is an African American and so falls within a class protected under RCW 49.60 and 42 U.S.C. § 1981. He was determined by King County to possess at least minimum qualifications to proceed to the interview level of the hiring process and he completed the interview panel process. Plaintiff was then denied a promotion to the position of Assistant Fire Marshal, and the job was instead given to a Caucasian candidate. Thus, the four criteria of (1) protected class; (2) meeting employer's legitimate expectations; (3) adverse employment action; and (4) non-protected class employee treated more favorably are met.

**B. Defendants' legitimate nondiscriminatory explanation.**

Defendants offer several nondiscriminatory explanations as to why Defendant Canary was the better qualified applicant for the Assistant Fire Marshall position, including Plaintiff's multiple failures of the Washington State Patrol Fire Investigator written certification, and Defendant Canary's superior education, management, and leadership experience, higher productivity and investigation clearance rate, and superior interview performance. Defendants thus meet their burden of production by providing legitimate nondiscriminatory explanations for their hiring decision.

ORDER - 4

**C. Pretext.**

Plaintiff then has the burden to introduce evidence from which a reasonable jury could infer that Defendants' articulated reasons are pretextual. This can be demonstrated "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Chuang v. University of California Davis, 225 F.3d 1115, 1123-24 (9th Cir. 2000) (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)).  A plaintiff need offer "very little" direct evidence to raise a genuine issue of material fact, but where a plaintiff relies on circumstantial evidence, that evidence must be "specific and substantial" to defeat the employer's motion for summary judgment.  Johnson v. Evangelical Lutheran Good Samaritan Society, 2005 WL 2030834, *6 (D.Or. 2005), citing Coghlan v. American Seafoods Co., LLC, 413 F.3d 1090, 1095 (9th Cir. 2005) (citations and footnotes omitted).

Plaintiff sets forth several items as direct and circumstantial evidence of racially disparate treatment in the hiring process.  Plaintiff first raises the lack of diversity on the interview panels.  Panel diversity, while not strictly mandatory, was understood by other King County employees as an established policy, and it was also considered desirable in terms of the comfort level of minority applicants. ( Moore Dep. 28:9-31:7; Graves Dep. 22:18-23:5; Frawley Dep. 47:4-48:2).   According to the initial EEO report, Defendant Rankin's explanation for the lack of diversity on the interview panels was his inability to find any qualified persons of color to serve; he also admitted that he did not seriously consider panel diversity since he was not required to do so.  (Plaintiff's Exhibit 3, pp.80-81).  However, the EEO investigator at that time made a finding that since there were qualified minority Fire Marshalls in Seattle and Auburn, Defendant Rankin's proffered explanation was direct or circumstantial evidence of impermissible racial motives in the hiring process.  (Plaintiff's Exhibit 3, p.

ORDER - 5

81, 85; Plaintiff's Exhibit 44, p.206). The investigator's conclusion was later modified without explanation in her final report to determine that the findings suggested Rankin "could not find any qualified persons of color to sit on the interview panel because he was not required to look." (Plaintiff's Exhibit 2, p.63). The lack of panel diversity and the issue of the comfort of non-white candidates was also raised as a concern prior to the commencement of the interview process, without result. (Frawley Dep. 46:4-47:17). Defendants' argument that Defendant Rankin was not seeking panelists from Seattle and Auburn is questionable, since a Fire Marshall from Auburn sat on one of the panels. (Defendant's Reply at 4; Plaintiff's Exhibit 2 p.62). The potential effect of a non-diverse panel on Plaintiff's interview performance is relevant to his claim, and the evidence presented creates a competing reasonable inference regarding the lack of diversity on the interview panels that alone is sufficient to survive summary judgment on Plaintiff's discrimination claims.

Plaintiff has also set forth evidence of possible disparate treatment in the hiring process. Specifically, Defendant Canary was allowed to act in the Assistant Fire Marshall position on two separate occasions constituting nearly all of the three-week period prior to the interview process. (Plaintiff's Exhibit 19-21). Plaintiff requested a like opportunity to temporarily serve in the position but was denied. (Gibson Decl. at 4). The issue of the appearance of unfairness created by this decision was raised with Deputy Director King, who rejected the suggestion that the temporary position be rotated between the two candidates. (Frawley Dep. 50:7-52:7). The EEO investigator also initially noted an understanding by other employees that the position belonged to Defendant Canary before the hiring process was completed. (Plaintiff's Exhibit 44, p.204). The evidence thus creates a competing reasonable inference as to whether Defendant Canary was given advantages in the hiring process that were racially motivated.

ORDER - 6

Plaintiff has thus met his burden to avert summary judgment on his state law and section 1981 racial discrimination claims.

### III.  Hostile racial environment claim

A racially hostile work environment is established by evidence of conduct of a racial nature severe or pervasive enough that a reasonable person would find it hostile and abusive; the victim must also subjectively perceive the environment to be abusive such that the conduct has actually altered conditions of the plaintiff's employment.  Harris v. Forklift Systems, Inc. 510 U.S. 17, 21 (1993). Washington courts employ the federal  "totality of the circumstances" analysis in determining whether a hostile work environment exists in violation of RCW 49.60, taking into account all factors including the frequency and severity of conduct, and whether it unreasonably interferes with an employee's work performance.  MacDonald v. Korum Ford, 80 Wn.App. 877,  885 (1996).  The effect on the employee's psychological well-being is relevant to the inquiry, but no single factor is required.  Harris, 510 U.S. at 23.

Plaintiff has set forth sufficient evidence by which both an objectively and subjectively hostile racial environment could be inferred.   First, Plaintiff presents evidence that a co-worker, who was previously disciplined for making a racist epithet, attempted to spread false rumors that Gibson was unable to read, write, or speak in complete sentences during the EEO investigation of Plaintiff's complaint. (Plaintiff's Exhibit 2, p.59). The EEO investigator also determined that at least eight other employees had heard similarly false rumors of Gibson's illiteracy.  Id.  Plaintiff's evidence also demonstrated that several employees offered testimony to the EEO investigator regarding racially charged statements and racially disparate treatment and hiring practices generally within the department. (Plaintiff's Exhibit 2, p.65; Plaintiff's Exhibit 25, Plaintiff's Exhibit 44, p. 200).  In its

ORDER - 7

letter of July 27, 2004, the King County Prosecutor's Office acknowledged its intent to investigate employee claims regarding race issues, though to date it does not appear from the record that an outside investigation has been conducted. (Plaintiff's Exhibit 8; Graves Dep. 55:2-5). The EEO investigator also received statements from several employees regarding Gibson's social isolation in the workplace and the potential relationship of this isolation to race issues. (Plaintiff's Exhibit 2, pp.55-57).

Plaintiff's evidence also demonstrates that the EEO investigator's findings changed over time from an initial determination of direct and circumstantial evidence of racism to a finding of neither overt nor circumstantial evidence sufficient to establish a clear discriminatory motive, subsequent to editing by the King County Prosecutor's office. It is not clear from the record why the EEO investigator's conclusions changed or whether it was as a result of the Prosecutor's editing. This evidence raises a question of fact as to whether the final report's modified conclusions reflect and were a part of a racially hostile environment subjectively experienced by Plaintiff.

Plaintiff has set forth sufficient evidence by which a trier of fact could find that a reasonable person in Plaintiff's workplace was objectively and subjectively racially hostile such that it altered conditions of his employment.

### IV. Retaliation claim

To make a prima facie showing of retaliation under RCW 49.60.210, a plaintiff must show that 1) he engaged in protected activity; 2) the employer took adverse employment action; and 3) there is a causal link between the protected activity and the adverse action. Hines v. Todd Pacific Shipyards Corp., 127 Wn.App.356, 374 (2005), citing Milligan v. Thompson, 110 Wn.App. 628, 638 (2002). The same McDonnell Douglas burden shifting analysis applies to state law retaliation claims. Renz v.

ORDER - 8

Spokane Eye Clinic, P.S., 114 Wn.App. 611, 618 (2002).  In order to meet his initial burden, a plaintiff must allege that an actual adverse employment action was taken against him, such as a discharge.  Graves v. Dept. of Game, 76 Wn.App.705, 712 (1994); see also Bierlein v. Byrne, 103 Wn.App. 865, 867 (2000) (plaintiff failed to specify discriminatory or retaliatory conduct by defendant); Harris v. City of Seattle, 315 F.Supp. 1112, 1125 (W.D.Wash. 2004) (in state law retaliation claim, adverse employment action includes termination, demotion, reassignment with significantly different responsibilities, or significant reduction in pay or benefits).

Plaintiff engaged in protected activity by complaining of disparate treatment in the hiring process, which led to the launch of an internal investigation.  However, Plaintiff fails to establish a genuine issue whether Defendants took an adverse employment action against him after he lodged his complaint.  Beyond general allegations, Plaintiff only points to three actual actions by his employer, namely a temporary change of his schedule, the packing up of his belongings subsequent to his departure, and the anonymous return of his office plaque.  These incidents are insufficient to create a genuine issue of material fact as to whether Defendants retaliated against him.

### V. Constructive discharge claim

Plaintiff did not make an express claim for constructive discharge in his complaint.  However, Defendants raised this claim in their moving papers.  The Court is reluctant to rule on a claim that cannot be found in the pleadings, particularly one that could theoretically be inferred in any case.  Even if the complaint could be stretched so far as to suggest an implied constructive discharge claim, Plaintiff has failed to present sufficient evidence that his working conditions were so intolerable at the time he resigned to survive summary judgment on this claim.  See Brooks v. City of San Mateo, 229 F.3d 917 (9th Cir. 2000) (where plaintiff alluded to constructive discharge claim in her moving papers,

district court did not err in deciding that claim failed as matter of law, since reasonable trier of fact could not find she was driven from workplace).  A constructive discharge occurs when a person quits his job under circumstances in which a reasonable person would feel that the conditions of employment have become intolerable.  Draper v. Coeur Rochester, Inc., 147 F.3d 1104, 1110 (9th Cir. 1998).  Generally, whether working conditions have risen to an "intolerable" level is a jury question.  Sanchez v. City of Santa Ana, 915 F.2d 424, 431 (9th Cir. 1990), cert. denied, 502 U.S. 815, 112 (1991).  But there must be evidence presented that an employer has deliberately acted to make an employee's working conditions so intolerable that the employee was forced to resign.  Sneed v. Barna, 80 Wn.App. 843, 849 (1996).  A plaintiff must demonstrate triable issues of fact as to whether a reasonable person in his position would have been forced to quit as a result of intolerable and discriminatory working conditions.  Steiner v. Showboat Operating Co., 25 F.3d 1459, 1465 (9th Cir. 1994).  Courts typically look for either "aggravating circumstances" or a "continuous pattern of discriminatory treatment."  Wunderly v. S.C. Johnson & Son, Inc., 828 F.Supp. 801, 806 (D.Or. 1993); see also Brady v. Elixir Indus., 196 Cal.App.3d 1299, 1306 (1988) (actions causing employee to resign must be violative of public policy and intolerable at time of resignation; employer must have actual and constructive knowledge of situation and could have remedied it).  The existence of unlawful discrimination alone is insufficient to support a finding of constructive discharge from employment.  Glasgow v. Georgia-Pacific Corp., 103 Wn.2d 401, 408 (1985).  Failure to promote, in and of itself, is also not sufficient to result in a constructive discharge.  Grigsby v. North Miss. Medical Center, Inc., 586 F.2d 457 (5th Cir. 1978).  Plaintiff has not presented evidence of aggravating circumstances or deliberate acts by Defendants at the time of his resignation by which a reasonable person could find a

situation so intolerable that Plaintiff was forced to resign. Assuming that an implied constructive discharge claim may be inferred from Plaintiff's complaint, it does not survive summary judgment.

## VI.  Aiding and abetting claim

Defendants do not offer any argument addressing this claim and why it should be dismissed on summary judgment. Thus, Plaintiff's claim for aiding and abetting the commission of unfair practices in violation of RCW 49.60.220 remains.

## CONCLUSION

The Court DENIES Defendants' motion for summary judgment on Plaintiff's state law discrimination, section 1981, and hostile racial environment claims, since Plaintiff has presented sufficient evidence to raise a genuine issue of material fact as to these claims. The Court DENIES Defendants' motion for summary judgment on Plaintiff's aiding and abetting unfair practices claim because Defendants fails to present an argument as to this claim. The Court GRANTS Defendants' motion for summary judgment on Plaintiff's retaliation claim and implied constructive discharge claims, since on these claims, Plaintiff has failed to present evidence sufficient to raise a genuine issue of material fact.

Dated: November 10th, 2005.

                                          s/Marsha J. Pechman
                                          Marsha J. Pechman
                                          United States District Judge